WILLIAM S. MIKO ET AL. *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES ET AL.
(14192)
(14193)

SHEA, GLASS, COVELLO, BORDEN and F. X. HENNESSY, Js.

Argued May 3—decision released August 20, 1991

*Charles H. Benson,* assistant attorney general, with whom were *David M. Teed,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellant in the first appeal (named defendant).

*Brian L. Smith,* certified legal intern, with whom was *James A. Trowbridge,* for the appellant in the second appeal (defendant Nancy Marzan Melendez).

*J. Roger Shull,* for the appellees (plaintiffs).

GLASS, J. This case involves a claim of housing discrimination brought by the defendant Nancy Marzan Melendez against the plaintiffs, William S. Miko, Joseph Miko and Edward D. Sullivan, as owners of Olive Garden Apartments, an apartment complex in Bridgeport. Melendez filed a complaint with the named defendant, the commission on human rights and opportunities (CHRO), alleging that she had been denied housing, in violation of General Statutes (Rev. to 1987) § 46a-64a,[1] because she had a child. A hearing officer appointed

---

[1] General Statutes (Rev. to 1987) § 46a-64a provides in relevant part: "DISCRIMINATION AGAINST FAMILIES WITH CHILDREN PROHIBITED. (a) In the rental of a dwelling unit, no landlord or landlord's agent may discriminate against any tenant or potential tenant because such tenant occupies or intends to occupy the dwelling unit with minor children.

"(b) The provisions of subsection (a) of this section shall not apply (1) to the renting of (A) single-family and two-family houses or (B) a dwelling unit in a house containing dwelling units for not more than four families living independently of each other, if the owner of such house resides in one of the dwelling units; or (2) if such rental would violate any local, state or federal law or regulation, or condominium bylaw."

Melendez also alleged discrimination based on gender and marital status in violation of General Statutes (Rev. to 1987) §§ 46a-58 (a) and 46a-64 (a) (1) and (2). Since these allegations were not the basis of the decisions of the CHRO and of the trial court, we do not address them here.

by the CHRO upheld Melendez' claim and awarded her damages. The plaintiffs appealed, and the trial court, *Dean, J.,* sustained the appeal and vacated the monetary award to Melendez. Melendez and the CHRO now appeal from the judgment of the trial court.[2] We reverse.

After conducting a formal hearing, the hearing officer found the following facts. In August, 1984, the plaintiffs were the owners of the Olive Garden Apartments. On August 24, 1984, Melendez, who had a minor child, telephoned Olive Garden Apartments in Bridgeport to inquire about renting an apartment. She spoke with the manager, Roberto Torres, who informed her that the owners did not rent to families with children. Torres refused to show Melendez an apartment and did not permit her to file an application. Neither the plaintiffs nor Torres inquired about Melendez' financial qualifications at that time. On September 7, 1984, Melendez filed a complaint with the CHRO. The complaint was referred to CHRO investigator Joan Corno. After several failed attempts to conciliate the matter, Corno certified the complaint to a public hearing.

The hearing officer excluded evidence proffered by the plaintiffs relating to the terms of a proposed settlement agreement and relating to Melendez' financial circumstances. In a decision dated March 14, 1989, and mailed to the parties on March 16, 1989, the hearing officer found that the case had not been settled and held that the evidence of the terms of conciliation was properly excluded. On the basis of the facts found at the hearing, the hearing officer concluded that the plaintiffs had discriminated against Melendez, in violation of § 46a-64a, because she had a child, and awarded her damages.

[2] The appeal was transferred to this court from the Appellate Court pursuant to Practice Book § 4023.

On March 29, 1989, the plaintiffs appealed the decision of the hearing officer to the trial court, claiming that the hearing officer: (1) violated the plaintiffs' right to a fair hearing; and (2) improperly excluded evidence offered by the plaintiffs. On April 26, 1989, the CHRO, on behalf of Melendez, filed a petition for rehearing, limited to the issue of the hearing officer's failure to award interest on the damages. On May 22, 1989, the hearing officer denied the CHRO's request for interest on the damages.

On May 19, 1989, the CHRO had moved in the trial court to dismiss the plaintiffs' appeal, alleging that the trial court lacked subject matter jurisdiction because the appeal was premature. The trial court, *Thompson, J.*, denied the motion to dismiss, noting that the appeal had been filed on April 13, 1989, within forty-five days of the mailing of the hearing officer's decision on March 16, 1989. The court concluded that General Statutes (Rev. to 1987) § 4-183 (b)[3] does not "invalidate a properly filed appeal under circumstances where a party *other than the plaintiff* files a petition for rehearing." (Emphasis in original.) Thus, the trial court concluded that the plaintiffs' appeal was from a final decision and was not premature.

On the merits of the plaintiffs' appeal, the trial court determined that the hearing officer improperly excluded evidence of the proposed terms of conciliation and evidence of Melendez' financial qualifications. The court further determined that the hearing officer's evidentiary rulings prevented the plaintiffs from obtaining

[3] The Uniform Administrative Procedure Act (UAPA), including General Statutes (Rev. to 1987) § 4-183, was significantly revised in 1989 by No. 88-317 of the 1988 Public Acts. All agency proceedings commenced prior to July 1, 1989, the effective date of the revisions, are governed by the law in effect when the proceeding was commenced. General Statutes (Rev. to 1987) § 4-185. Since Melendez' complaint was filed on September 7, 1984, the UAPA provisions in effect prior to the 1989 revisions apply.

a fair hearing. Finally, the trial court concluded that the matter had been conciliated, and sustained the appeal.

On appeal, the CHRO claims that the trial court: (1) improperly exercised jurisdiction over the appeal; (2) applied the incorrect standard of review to the decision of the CHRO hearing officer; (3) applied the incorrect legal standard to a claim of overt discrimination; and (4) improperly ruled that evidence relating to the terms of the proposed conciliation agreement should have been admitted by the hearing officer.[4] The plaintiffs claim on appeal that the hearing officer improperly excluded evidence of Melendez' financial qualifications to rent.[5] We reverse the judgment of the trial court and remand the case to that court with direction to dismiss the plaintiffs' appeal and to make and enter a decree enforcing the decision of the hearing officer.

I

The CHRO first claims that the trial court lacked subject matter jurisdiction over the plaintiffs' appeal from

[4] Melendez claims that the trial court improperly: (1) failed to articulate a standard of review in evaluating the hearing officer's decision; and (2) reversed the hearing officer's decision without finding that substantial rights of the plaintiffs had been prejudiced. As these claims are subsumed under the claims of the CHRO, however, they will not be addressed separately. Melendez' remaining claims are duplicative of the CHRO's claims and, thus, will not be addressed.

[5] The plaintiffs present this claim for review as an adverse ruling of the CHRO hearing officer which should be considered in the event a new hearing is awarded to the CHRO and Melendez. See Practice Book § 4013 (a) (1) (B). We review this claim despite our finding that no new hearing is required. As alternate grounds for affirmance, the plaintiffs have also claimed that: (1) the CHRO does not have jurisdiction over individual complaints alleging a single act of discrimination; (2) the CHRO lost jurisdiction for failure to follow statutory procedure; (3) the hearing officer improperly granted a *Secondino* inference in connection with the plaintiffs' failure to call Roberto Torres as a witness; *Secondino* v. *New England Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960); and (4) the hearing officer improperly held that the alleged act of Torres was chargeable to the plaintiffs. These claims were not raised in the trial court and, therefore, this court is not bound to review them. See Practice Book § 4185. We decline to do so.

the administrative decision, because the CHRO subsequently filed a timely petition for rehearing. The trial court concluded that it had jurisdiction, reasoning that § 4-183 (b) "permits a party aggrieved by an agency's decision to *either* file an appeal of that decision *or* a petition for rehearing within the specified period." (Emphasis added.) The court concluded that the statute does not "invalidate a properly filed appeal" where a party other than the appellant files a petition for rehearing. We agree with the trial court.

A reviewing court should indulge every presumption in favor of the trial court's subject matter jurisdiction. See *LeConche* v. *Elligers,* 215 Conn. 701, 709–10, 579 A.2d 1 (1990); *Demar* v. *Open Space & Conservation Commission,* 211 Conn. 416, 425, 559 A.2d 1103 (1989). Where the legislature has granted the Superior Court jurisdiction over timely appeals from final decisions of administrative agencies under § 4-183, a subsequent petition for rehearing, however timely, filed by a different party, does not terminate the court's jurisdiction.

General Statutes (Rev. to 1989) § 46a-94a states that appeals from the final decision of a hearing officer of the CHRO shall be "in accordance with section 4-183" of the Uniform Administrative Procedure Act (UAPA). General Statutes §§ 4-166 through 4-189. As of the date relevant to agency proceedings on Melendez' complaint, § 4-183 (b) provided, in pertinent part, that appeals under the UAPA "shall be instituted by filing a petition in superior court . . . within forty-five days after mailing of the notice of the final decision of the agency or, if a rehearing is requested, within forty-five days after mailing of the notice of the decision thereon." Contrary to the claim of the CHRO, the timing of the plaintiffs' appeal complied with the requirements of § 4-183 (b).

The CHRO relies heavily on a decision of the Appellate Court construing § 4-183 (b). See *Connecticut Natural Gas Corporation* v. *Department of Public Utility Control,* 1 Conn. App. 1, 467 A.2d 679 (1983). In *Connecticut Natural Gas Corporation,* the plaintiff timely filed for rehearing, then filed a timely appeal to the trial court after the rehearing decision was rendered. Id., 2. The issue before the Appellate Court was whether, under § 4-183 (b), the plaintiff's appeal was timely, where the appeal was filed within forty-five days of the decision on the rehearing petition. Id. The Appellate Court concluded that the appeal was timely, based on both the language and purposes of the statute. Id., 3. The court determined that a central purpose of the UAPA was to prevent piecemeal appeals by requiring exhaustion of administrative remedies and finality of administrative action. Id. Finally, the court noted the benefit of allowing a litigant to assess the need for an appeal in light of the rehearing results. Id.

Where one party complies with the requirements of § 4-183 (b) by filing a timely appeal, judicial economy and fairness dictate allowing that appeal to remain within the court's jurisdiction. In this case, the plaintiffs' appeal was timely. In contrast to *Connecticut Natural Gas Corporation,* the plaintiffs' appeal was filed first and, therefore, jurisdiction vested in the trial court. The plaintiffs had exhausted their administrative remedies and appealed in accordance with statutory requirements. Where, as in the present case, an issue unrelated to the appeal is raised on rehearing by a party other than the appellant, there is no benefit to allowing the appealing party to assess the rehearing results, and the danger of piecemeal appeals is diminished.

The CHRO does not contend that the original hearing decision was not final, but, rather, that a petition for rehearing has the effect of "suspending the finality of the decision and extending the time for appeal."

We do not read § 4-183 (b) to oust, in this way, the trial court of properly obtained jurisdiction. Neither the language nor the purpose of § 4-183 (b) is contravened by finding jurisdiction in the present case. The trial court properly concluded that it had jurisdiction over the plaintiffs' appeal.

## II

The CHRO next claims that the trial court failed to apply the proper standard of review to the decision made by the CHRO. The trial court's review is governed by the UAPA, which limits the scope of judicial review of administrative agency decisions. See *Connecticut Light & Power Co.* v. *Department of Public Utility Control,* 219 Conn. 51, 57–58, 591 A.2d 1231 (1991); *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 593, 590 A.2d 447 (1991). Under General Statutes (Rev. to 1987) § 4-183 (g),[6] the "substantial evidence" rule governs judicial review of administrative factfinding. *Briggs* v. *State Employees Retirement Commission,* 210 Conn. 214, 217, 554 A.2d 292 (1989). In determining whether an administrative finding is supported by "substantial evidence," the reviewing court must defer to the agency's assessment of the credibility of witnesses. Id., 217. The determination of issues of fact by the administrative agency should be upheld if the record before the agency affords

[6] General Statutes (Rev. to 1987) § 4-183 (g), entitled "Appeal to Superior Court," provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

a " ' " 'substantial basis of fact from which the fact in issue can be reasonably inferred.' " ' " Id. Ultimately, "[t]he question is not whether the trial court would have reached the same conclusion but whether the record before the [agency] supports the action taken." *Williams* v. *Liquor Control Commission,* 175 Conn. 409, 414, 399 A.2d 834 (1978).

Relying on *Board of Education* v. *Commission on Human Rights & Opportunities,* 176 Conn. 533, 538–39, 409 A.2d 1013 (1979), the trial court properly noted that the findings of the agency should be upheld if supported by "substantial and competent evidence" and that the reviewing court should not "try the case de novo, adjudicate the facts, or substitute its own discretion for that of the [agency]." The court, however, did not adhere to that standard. First, the court considered certain evidence excluded at the administrative hearing and made findings of fact based on the excluded evidence. For example, after ruling that the hearing officer should have admitted evidence of a proposed conciliation agreement, a question properly before the court, the trial court proceeded to review such evidence and make a finding thereon. In its findings, the trial court improperly assessed the credibility of the CHRO investigator's testimony regarding the proposed conciliation agreement. In addition, the trial court found as an undisputed fact that "[t]he landlord made a decision that Melendez did not qualify financially." Since the hearing officer excluded evidence of Melendez' ability to pay rent, the trial judge could only have made such a finding by reviewing evidence not before the administrative agency. Section 4-183 (g) specifically forbids the trial court from substituting its judgment as to the weight of the evidence. We are persuaded that the trial court did not defer to the substantial evidence in the administrative record, but, rather,

improperly substituted its own judgment for that of the hearing officer on issues of fact.

### III

The CHRO next claims that the trial court applied the incorrect legal standard for a claim of overt discrimination pursuant to § 46a-64a.[7] We agree.

In addressing claims brought under § 46a-64a, we are guided by the cases interpreting federal fair housing laws; 42 U.S.C. §§ 3601 through 3631; despite differences between the state and federal statutes. *Zlokower* v. *Commission on Human Rights & Opportunities,* 200 Conn. 261, 264, 510 A.2d 985 (1986). In construing federal fair housing laws, the federal courts have adopted the evidentiary requirements set forth by the United States Supreme Court in federal employment discrimination cases. Id., 265. Therefore, we may look to these employment discrimination cases for the appropriate standard applicable to Melendez' claim.

The United States Supreme Court has set forth three theories of discrimination, each of which requires a different prima facie case and corresponding burden of proof. These theories are: (1) the disparate treatment theory; see *Texas Department of Community Affairs* v. *Burdine,* 450 U.S. 248, 252–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corporation* v. *Green,* 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); (2) the disparate impact theory; see *Wards Cove Packing Co.* v. *Atonio,* 490 U.S. 642, 109 S. Ct. 2115, 104 L. Ed. 2d 733 (1989);[8] *International*

---

[7] See footnote 1, supra, for the full text of the statute.

[8] The disparate impact theory applies to patterns and practices which are facially neutral but discriminatory as applied, and does not require evidence of subjective intent to discriminate. *Wards Cove Packing Co.* v. *Atonio,* 490 U.S. 642, 645–46, 109 S. Ct. 2115, 104 L. Ed. 2d 733 (1989). The disparate impact theory is not relevant to an individual claim of discrimination based on direct evidence, such as the claim in this case.

*Brotherhood of Teamsters* v. *United States,* 431 U.S. 324, 357–62, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977); and (3) the direct evidence theory. See *Price Waterhouse* v. *Hopkins,* 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (plurality opinion).[9] The question before us is whether the trial court applied the proper theory to Melendez' claim. We conclude that the trial court in effect improperly applied the disparate treatment theory when the direct evidence theory was applicable.

The elements of a prima facie case under the disparate treatment theory were first set forth by the United States Supreme Court in *McDonnell Douglas Corporation* v. *Green,* supra, in relation to employment discrimination claims. This court has applied the prima facie case established in *McDonnell Douglas Corporation* to housing discrimination claims brought under § 46a-64a. *Chestnut Realty, Inc.* v. *Commission on Human Rights & Opportunities,* 201 Conn. 350, 514 A.2d 749 (1986); *Zlokower* v. *Commission on Human Rights & Opportunities,* supra. Under the disparate treatment theory, the plaintiff claiming discrimination in rental housing must prove that: (1) she is a member of the statutorily protected class; (2) she has applied for and was qualified to rent the unit involved; (3) she was rejected by the defendant landlord; and (4) the unit remained available thereafter. *Zlokower* v. *Commission on Human Rights & Opportunities,* supra, 266. The

[9] The plurality opinion does not specifically refer to a "direct evidence" theory, but, rather, characterizes *Price Waterhouse* as a "mixed motives" case. *Price Waterhouse* v. *Hopkins,* 490 U.S. 228, 246, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989). Lower federal courts, however, applying the *Price Waterhouse* analysis, have adopted terms expressly incorporating "direct evidence." See, e.g., *Equal Employment Opportunity Commission* v. *Alton Packing Corporation,* 901 F.2d 920, 925 (11th Cir. 1990) ("direct evidence case"); *Dunning* v. *National Industries, Inc.,* 720 F. Sup. 924, 929 n.6 (M.D. Ala. 1989) ("direct evidence threshold"). We follow these lower federal courts in using the term, "direct evidence theory," in the present case.

plaintiff has the initial burden of offering evidence on the above elements adequate to create an inference that the refusal to rent was based on a discriminatory criterion. *Chestnut Realty, Inc.* v. *Commission on Human Rights & Opportunities,* supra, 361. Once a prima facie case has been made out, the burden of production shifts to the defendant. Id., 362. If the defendant articulates a legitimate, nondiscriminatory reason for its action, then the burden shifts back to the plaintiff to prove that the given reason was pretextual. Id., 364. The disparate treatment standard thus leaves the burden of persuasion at all times with the plaintiff. Id., 363.

The United States Supreme Court recognized that the prima facie case set forth in *McDonnell Douglas Corporation* was not intended to be an "inflexible formulation." See *Chestnut Realty, Inc.* v. *Commission on Human Rights & Opportunities,* supra, 361, quoting *International Brotherhood of Teamsters* v. *United States,* supra, 358. Rather, the requirements of proof must be tailored to the particular facts of each case. *McDonnell Douglas Corporation* v. *Green,* supra, 802 n.13. When the plaintiff presents direct evidence of discrimination, the *McDonnell Douglas Corporation* formulation does not apply; *Trans World Airlines, Inc.* v. *Thurston,* 469 U.S. 111, 121, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985); but rather a modified standard, the direct evidence theory, applies. *Price Waterhouse* v. *Hopkins,* supra, 250–55.[10] This departure from the *McDonnell Douglas Corporation* test is justified by the court's interpretation that the shifting burdens of proof required by that case were intended to ensure that the

---

[10] The court specifically rejected the application of the disparate treatment model set forth in *Texas Department of Community Affairs* v. *Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), to "mixed motives" cases. *Price Waterhouse* v. *Hopkins,* 490 U.S. 228, 247, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989).

"plaintiff [has] his day in court *despite* the unavailability of direct evidence." (Emphasis added.) *Trans World Airlines, Inc.* v. *Thurston,* supra, quoting *Loeb* v. *Textron, Inc.,* 600 F.2d 1003, 1014 (1st Cir. 1979).

The case that sets forth the standard to be applied where there is direct evidence of discrimination is *Price Waterhouse* v. *Hopkins,* supra. *Price Waterhouse* was a so-called "mixed motives" case, where the employer made a showing that the plaintiff's interpersonal problems were a legitimate concern despite evidence of discrimination against her based on gender. Id., 252. The court stated that, where the plaintiff had introduced sufficient evidence that prohibited discrimination had played a motivating part in her rejection from promotion, the employer had to establish by a *preponderance of the evidence* that a legitimate reason would have led to the same decision in the absence of discrimination. Id.[11] The critical inquiry is whether the discriminatory motive was a factor in the decision *"at the moment it was made."* (Emphasis in original.) Id., 241. An alleged discriminator "may not prevail in a mixed motives case by offering a legitimate and sufficient reason for its decision *if that reason did not motivate it at the time of the decision."* (Emphasis added.) Id., 252.[12] The plaintiff does, however, retain the burden of persuasion on the issue of whether a discriminatory motive played a part in the decision. Id., 246. Once the plaintiff has adduced sufficiently persuasive direct evidence that the

---

[11] The Second Circuit Court of Appeals has adopted the *Price Waterhouse* analysis in cases involving direct evidence of discrimination. See *Grant* v. *Hazelett Strip-Casting Corporation,* 880 F.2d 1564, 1568–69 (2d Cir. 1989).

[12] A number of federal district courts have applied the *Price Waterhouse* reasoning that a legitimate reason that did not motivate the alleged discriminator at the time of the discriminatory act is insufficient to rebut a plaintiff's prima facie case under the direct evidence theory. See, e.g., *Jew* v. *University of Iowa,* 749 F. Sup. 946, 960-61 (S.D. Iowa 1990); *Townsend* v. *Washington Metropolitan Area Transit Authority,* 746 F. Sup. 178, 186 (D.D.C. 1990).

defendant relied on a discriminatory motive, and the defendant has failed to show by a preponderance of the evidence that a legitimate reason existed at the time of the decision and had motivated that decision, the factfinder may render a judgment for the plaintiff.

We conclude that the applicable legal standard in the present case is the direct evidence theory based upon the uncontroverted evidence of discrimination, namely, the statements that the plaintiffs did not rent to families with children constituted direct evidence of prohibited discrimination.[13] Therefore, the plaintiffs were required to show by a preponderance of the evidence that a legitimate reason *existing at the time* of Melendez' rejection as a tenant, standing alone, actually led to the decision. The plaintiffs introduced no such evidence.

The trial court improperly applied the disparate treatment standard when it allowed the plaintiffs to rebut Melendez' direct evidence of discrimination by merely *articulating* a legitimate reason for rejecting Melendez, where there was no evidence in the record that a legitimate reason had caused the discriminatory action relied upon. The trial court overextended *Zlokower* v. *Commission on Human Rights & Opportunities,* supra, in holding that the case required Melendez to show her qualifications for tenancy as part of her prima

---

[13] Direct evidence has been held to include discriminatory statements by decisionmakers related to the decisionmaking process. See *Price Waterhouse* v. *Hopkins,* 490 U.S. 228, 255–58, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989); *Equal Employment Opportunity Commission* v. *Alton Packing Corporation,* 901 F.2d 920, 924 (11th Cir. 1990). Direct evidence has also been held to include a policy discriminatory on its face. *Trans World Airlines, Inc.* v. *Thurston,* 469 U.S. 111, 121–22, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985) (airline transfer policy expressly differentiated among employees based on age); see also *Price Waterhouse* v. *Hopkins,* supra, 277 (O'Connor, J., concurring) (direct evidence requires a showing that "decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision").

facie case. The court in *Zlokower* adopted disparate treatment analysis in requiring a complainant, as part of his initial burden, to introduce evidence that he was ready to accept the legitimate objective requirements of tenancy. Id., 266. In *Zlokower,* however, the plaintiff landlord introduced evidence at the CHRO hearing that legitimate business terms had been proposed to the complainant *at the time* of the allegedly discriminatory decision. Id., 265. Thus, *Zlokower,* on its facts, is distinguishable from this case where the plaintiffs presented no such showing of legitimate business requirements at the time of Melendez' rejection.

We hold that, when direct evidence of discrimination under § 46a-64a has been introduced by a complainant, the respondent landlord must show by a preponderance of the evidence that a legitimate and sufficient nondiscriminatory reason existed at the time the complainant was rejected as a tenant, and that such reason, standing alone, actually induced the decision. See *Price Waterhouse* v. *Hopkins,* supra, 246–47. We find that the trial court applied the incorrect standard. Moreover, we are persuaded that there is substantial evidence in the administrative record to support the hearing officer's decision that Melendez had made out a prima facie case of discrimination under the applicable direct evidence standard. See id., 251–55.

## IV

We turn finally to the two evidentiary questions presented in this appeal. First, we address whether the trial court properly found that the hearing officer should have admitted evidence of the proposed conciliation agreement between Melendez and the plaintiffs. Second, we address whether the trial court properly found that the hearing officer should have admitted evidence of Melendez' financial qualifications to rent an

Olive Gardens apartment. We find that the evidence was properly excluded by the hearing officer in both instances.[14]

Under § 46a-64a, the CHRO is empowered to protect families with minor children from discrimination in rental housing. General Statutes (Rev. to 1987) § 46a-83 (a) provides that, upon finding reasonable cause to believe that a discriminatory practice has been committed, a CHRO investigator "shall endeavor to eliminate the practice complained of by conference, conciliation and persuasion." Thus, once a complaint has been filed with the CHRO and reasonable cause has been found, the CHRO becomes a party to any conciliation efforts between the complainant and the alleged discriminator. The party status of the CHRO is implicit in its authority to reconsider the terms of a conciliation previously found to be "satisfactorily adjusted," if "justice so requires." Regs., Conn. State Agencies § 31-125-15.[15] Thus, a conciliation agreement under § 46a-64a is not complete unless the CHRO has been a party to it.

In the present case, the evidence excluded by the hearing officer was a purported conciliation agreement

---

[14] The trial court held that the plaintiffs did not get a fair hearing as a result of the "erroneous evidentiary rulings" of the CHRO hearing officer, including the exclusion of the proposed conciliation agreement and evidence related thereto. Since we find that such evidence was properly excluded by the CHRO hearing officer, the holding that the plaintiffs did not get a fair hearing must fall. See *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 249–51, 470 A.2d 1214 (1984) (exclusion of irrelevant evidence by agency did not violate due process). We note in passing, however, that "[t]he procedures required by the UAPA exceed the minimal procedural safeguards required by the due process clause." *Adamchek* v. *Board of Education,* 174 Conn. 366, 369, 387 A.2d 556 (1978).

[15] See also *Hillcroft Partners* v. *Commission on Human Rights & Opportunities,* 205 Conn. 324, 331–32, 533 A.2d 852 (1987) (complainant and the CHRO treated as separate parties under General Statutes [Rev. to 1987] § 46a-64a where complaint initiating agency proceeding sought relief only for wrongs complainant allegedly suffered).

signed only by Melendez and the plaintiffs. The CHRO investigator testified at the hearing that the complaint had not been successfully conciliated, and that no notice of a satisfactory adjustment had been received by the plaintiffs. Substantial evidence in the record supports the hearing officer's conclusion that the complaint had not been conciliated in accordance with § 46a-83 (a). After a review of the record, we are persuaded that the hearing officer properly excluded evidence of the proposed conciliation agreement.

The general rule is that evidence of an attempted settlement is not admissible against either party to the settlement negotiations. *Simone Corporation* v. *Connecticut Light & Power Co.,* 187 Conn. 487, 490, 446 A.2d 1071 (1982). This rule reflects the strong public policy of promoting settlement of disputes. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.5.4 (b). The one exception to this rule is that a statement made during settlement negotiations may come in as an admission of fact, where the statement was intended to state a fact. Id. Where it is not clear whether a statement is an offer of compromise or an admission of fact, however, the statement should be excluded. *Simone Corporation* v. *Connecticut Light & Power Co.,* supra. In the present case, the plaintiffs do not contend that the conciliation agreement contains any admission of fact. Therefore, under the general rule, evidence of the proposed conciliation agreement was inadmissible.

In addition to the general rule excluding evidence of settlement negotiations, CHRO investigators are prohibited from disclosing what has occurred during conciliation efforts, unless the complaint has been satisfactorily adjusted. General Statutes (Rev. to 1987) § 46a-83 (b); see also *Green* v. *Freedom of Information Commission,* 178 Conn. 700, 703, 425 A.2d 122 (1979) (purpose of confidentiality is to encourage settle-

ments).[16] More importantly, hearing officers appointed by the CHRO are prohibited from receiving in evidence "[a]ny endeavors or negotiations for conciliation." General Statutes § 46a-84 (e). These statutory dictates are consistent with the general rule, and support our conclusion that the hearing officer properly excluded evidence of the proposed conciliation agreement.

Finally, we consider the plaintiffs' claim that the hearing officer improperly excluded evidence of Melendez' financial qualifications to rent an Olive Gardens apartment. In considering this claim, we again review the standards for establishing a prima facie case of overt discrimination. Under the direct evidence standard, set forth in Part III of this opinion, the prospective tenant's qualifications are irrelevant to a determination of liability unless the landlord had a legitimate motive at the time of the discriminatory act. *Price Waterhouse* v. *Hopkins,* supra, 252. Furthermore, the landlord must have communicated at that time any legitimate business requirements of tenancy and given the applicant an opportunity to meet them. Where, as here, no evidence was submitted that a legitimate motive existed or was communicated to the applicant at that time, the applicant's financial status, ascertained *after* the discriminatory act, has no relevance and is, therefore, inadmissible with respect to whether the discriminatory act occurred.

Relevant evidence has been defined by this court as follows: " ' " 'One fact is relevant to another fact whenever, according to the common course of events, the

---

[16] Satisfactory adjustment occurs when the "investigator succeeds in his endeavors under conference, conciliation and persuasion . . . ." Regs., Conn. State Agencies § 31-125-15. A hearing occurs only when efforts prescribed by General Statutes (Rev. to 1987) § 46a-83 (a) have failed to eliminate a discriminatory practice. Thus, when a complaint is certified for hearing, as in the present case, it follows that there has been no satisfactory adjustment. General Statutes (Rev. to 1987) § 46a-84 (a).

existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable.' " ' " *State* v. *McClendon,* 199 Conn. 5, 8–9, 505 A.2d 685 (1986). Relevant evidence is admissible only to prove facts material to liability; that is, facts directly in issue or probative of matters in issue. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 8.1.2. Under the direct evidence standard, a prospective tenant's financial qualifications would only be material if they had motivated the landlord at the time of the alleged discriminatory act. *Price Waterhouse* v. *Hopkins,* supra. In the present case, the hearing officer specifically found that no inquiry into Melendez' financial qualifications was made at the time of the discriminatory act nor was Melendez given the opportunity to apply for an apartment unit. The hearing officer found that the sole basis for Melendez' rejection as a tenant was discriminatory. Therefore, Melendez' financial qualifications were not material to that issue, and the hearing officer properly excluded such evidence. The trial court did not defer to the substantial evidence in the record that supported the hearing officer's decision to exclude evidence of Melendez' financial qualifications to rent an apartment from the plaintiffs. We conclude that the hearing officer's decision was supported by substantial evidence and that Melendez had made a prima facie case of discrimination under the applicable direct evidence standard.

We note that the defendants' pleadings in the trial court include a counterclaim requesting an order enforcing the decision of the hearing officer pursuant to General Statutes (Rev. to 1989) § 46a-94a.[17] The trial

---

[17] "[General Statutes (Rev. to 1989)] Sec. 46a-94a. APPEAL TO SUPERIOR COURT FROM ORDER OF HEARING OFFICER. The commission on human rights and opportunities, any respondent or any complainant aggrieved by a final order of a hearing officer or any complainant aggrieved by the dismissal of his complaint by the commission may appeal therefrom in accordance with section 4-183, except venue for such appeal shall be in the judicial dis-

court did not procedurally rule on the counterclaim because it sustained the plaintiffs' appeal. Although the defendants have not specifically pursued the counterclaim in this appeal, their entitlement to it is implicit in our decision reversing the trial court's judgment. We therefore direct that the trial court enter an order appropriate to dismissing the appeal and enforcing the decision of the hearing officer as provided in § 46a-94a.

The judgment is reversed, and the case is remanded to the trial court with direction to dismiss the plaintiffs' appeal and to make and enter a decree enforcing the decision of the hearing officer.

In this opinion the other justices concurred.

trict in which the discriminatory practice is alleged to have occurred or in the judicial district in which such person resides or transacts business. The court on appeal shall also have jurisdiction to grant to the commission, respondent or complainant such temporary relief or restraining order as it deems just and suitable, and in like manner to make and enter a decree enforcing or modifying and enforcing as so modified or setting aside, in whole or in part, the order sought to be reviewed."