[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Phyllis Madigan, appeals the decision of the defendant, Commissioner of Motor Vehicles, suspending her non-resident operating privilege for a period of six months. The Commissioner acted pursuant to General Statutes § 14-227b on the basis that the plaintiff refused to submit to a chemical test of the alcohol content of her blood after her arrest for driving under the influence. The plaintiff appeals pursuant to General Statutes § 4-183.
In her brief, the plaintiff asserts two reasons for her appeal of the Commissioner's decision: (1) she did not refuse to be tested for her blood alcohol content; and (2) there was no probable cause for her arrest. She contends that there was insufficient evidence to support the findings of the hearing officer.
At the administrative hearing, the plaintiff appeared, represented by counsel, and testified. A passenger in the plaintiff's vehicle at the time of her arrest also testified. The plaintiff also offered into evidence four photographs of the area where she performed the standard field sobriety tests and phone records of calls she made at the police station. The hearing officer admitted into evidence, without objection, the report of the arresting officer, the A44 form, and a six-page supplemental narrative report.
The police officer's report states: that he observed CT Page 10840 the plaintiff drive through a red traffic light; that he followed the plaintiff's vehicle and observed her cross both the center and shoulder lines; that the officer stopped the plaintiff and she indicated that she had consumed two glasses of wine; that while speaking with the plaintiff, he observed her eyes bloodshot, her speech slurred and the smell of alcohol on her breath; that the plaintiff failed all administered field sobriety tests; that the plaintiff was transported to police headquarters where she was read her rights and permitted time to make several phone calls, all of which were unsuccessful; that the plaintiff was then read the Implied Consent Advisory, which was followed by her refusal to be tested at 2239 hours; and, that when asked the reason for her refusal, she replied, "because I don't think I should have to".
The plaintiff's passenger testified as follows: that she and the plaintiff were co-workers and very good friends; that after work, she, the plaintiff and other employees gathered at a neighborhood restaurant for conversation and a glass or two of wine; that thereafter, the plaintiff followed her home, uneventfully; that after socializing at home, she and the plaintiff decided to go out to eat; that she became a passenger in the plaintiff's vehicle; that she had no concerns about the plaintiff's ability to drive and she observed no signs that the plaintiff was intoxicated; that she never observed the plaintiff cross the center or shoulder lines; that the traffic light in question was yellow, not red, when the plaintiff drove through it; and, that she was able to hear only bits and pieces of the field testing because she was asked to wait inside the car.
Next, the plaintiff testified, corroborating her passenger's testimony of the events which preceded her being stopped by the police. The plaintiff further alleged the following: that she was completely exhausted from a difficult work week; that she consumed two glasses of wine; that the traffic light in question was clearly yellow, not red, when she passed it; that she and her passenger were confused as to why the police stopped her; that the field test location was very rough, bumpy and cracked; that her cowboy boots impaired her ability to perform certain field tests; that at the police station she was told she would have to take a breath test; that she told the officer she wanted to make phone calls to get some advice; that between 10:28 p. m. and 10:45 p. m., she made nine phone calls to friends and/or relatives, but was unable to connect with anyone; that she did not understand that she would CT Page 10841 lose her license for six months if she refused to take the test; that she did not say she would not take the test "because I don't think I should have to"; that after almost a half hour of unsuccessful phone calls, the officer indicated that her phone time had ended and he requested her to take the breath test; that she responded by requesting additional phone time to seek advice; that she was then placed in a cell; that she does not recall being advised of the consequences of refusing a breath test; and, that she does not recall being told her conduct was interpreted as a refusal to be tested.
The court has carefully reviewed the record and can find no evidence that the plaintiff ever unconditionally consented to the blood alcohol content test. Based on the evidence in the record, as summarized above, the hearing officer could reasonably have found that the plaintiff refused to be tested unless and until one of her numerous phone calls was answered. The plaintiff's own testimony is that she "was on the phone for almost a half an hour or so"; that she "made nine calls altogether"; that the officer told her that her phone time was up, she must be tested; and, that she responded "I would like to, I would still like to try my brother and make a telephone call in a couple of minutes."
"Since there is nothing in the applicable statutes, General Statutes § 14-227b, which permits an accused to impose conditions on her consent to the BAC test, the hearing officer was justified in concluding that the plaintiff has refused to consent. See Kramer v. DelPonte, 26 Conn. App. 101 (1992);Plorek v. DelPonte, 28 Conn. App. 911 (1992)." Clark v.Goldberg, No. CV-92-0123017, Superior Court, Judicial District of Stamford-Norwalk at Norwalk (February 2, 1993, Maloney, J.).
Additionally, the police officer states in his report that the plaintiff refused to be tested. That statement is supported by the signed acknowledgement of a second police officer who claims to have witnessed the plaintiff's refusal. General Statutes § 4-183(f) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact". The hearing officer was entitled to credit fully the police statements. See Tassmer v.Commissioner, No. CV-94-0361693, Superior Court, Judicial District of New Haven at New Haven (April 11, 1995, Maloney, J.). CT Page 10842
Next, the plaintiff claims that the evidence regarding probable cause to arrest her was conflicting, thus, insufficient to support a finding of probable cause.
Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that the person arrested had committed an offense. State v. Wilson,153 Conn. 39, 42 (1965).
In this case, the officer had numerous indicators to satisfy the requirements of probable cause, as he outlined in his report which is a part of the administrative record. Although the testimony of both the plaintiff and her passenger conflicts with the police report, this court must defer to the Commissioner's assessment of the credibility of the witnesses and to the hearing officer's right to believe or disbelieve the evidence presented. Connecticut Building Wrecking Co. v.Carothers, 218 Conn. 580, 593 (1991). This court may not try the case de novo, adjudicate facts or substitute its own discretion for that of the agency. Miko v. CHRO, 220 Conn. 192,201 (1991).
For the reasons stated herein, this court finds that the administrative record provides substantial evidence upon which the hearing officer could reasonably have based her findings. Accordingly, the appeal is dismissed.
Martin, J.