DEPARTMENT OF HEALTH SERVICES *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES EX REL. ANTOINETTE MASON
(12677)
(12678)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued December 4, 1985—decision released February 4, 1986

*Donald C. Pogue,* with whom, on the brief, was *Gregg D. Adler,* for the appellant (defendant Antoinette Mason).

*Phillip A. Murphy, Jr.,* with whom was *Raymond P. Pech,* for the appellant (named defendant).

*Stanley K. Peck,* special assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (department of health services).

*Richard R. Brown,* for the appellee (plaintiff Janet Kapish).

PETERS, C. J. This case concerns the scope of a trial court's authority to modify, in contempt proceedings,

a final remedial order enforcing an administrative determination that the alleged contemnor has engaged in a pattern of discriminatory conduct. The present proceedings began with a complaint by the defendant Antoinette Mason to the defendant commission on human rights and opportunities (hereinafter the CHRO) pursuant to General Statutes § 31-127 (now § 46a-82).[1]

---

[1] At the time the complaint was filed, June 14, 1977, General Statutes § 31-127 (now amended as § 46a-82) provided: "Sec. 31-127. PROCEDURE. Any person claiming to be aggrieved by an alleged unfair employment practice may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unfair employment practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission. The commission, whenever it has reason to believe that any person has been engaged or is engaged in an unfair employment practice, may issue a complaint. Any employer whose employees, or any of them, refuse or threaten to refuse to comply with the provisions of this chapter may file with the commission a written complaint under oath asking for assistance by conciliation or other remedial action. The submission of a claim to the arbitration process shall not bar a person from filing a complaint under this chapter and, in considering such claim, the commission and the hearing tribunal may admit in evidence any decision resulting from such arbitration and accord it such weight as may be appropriate under the facts and circumstances of the case. After the filing of any complaint, the chairman of the commission shall refer the same to a commissioner or investigator to make investigation of such complaint and, if such commissioner or investigator determines after such investigation that there is reasonable cause for believing that an unfair employment practice has been or is being committed as alleged in such complaint he shall endeavor to eliminate the unfair employment practice complained of by conference, conciliation and persuasion. In the conduct of such investigation the commission may issue subpoenas requiring the production of employment records relating to the complaint under investigation. No commissioner or investigator shall disclose what has occurred in the course of such endeavors, provided the commission may publish the facts in the case and any complaint which has been dismissed and the terms of concilation when a complaint has been adjusted. In case of failure to eliminate such practice, the investigator or investigating commissioner shall certify the complaint and the results of his investigation to the chairman of the commission and to the attorney general. The chairman of the commission shall thereupon appoint a hearing tribunal of one member of the commission or one hearing examiner to hear such complaint and shall cause to be issued and

The complainant charged that the plaintiff department of health services (hereinafter the DOHS) had deprived her of a promotion because of racial discrimination in violation of General Statutes § 31-126 (a) (now

served in the name of the commission a written notice, together with a copy of such complaint, as the same may have been amended, requiring the person, employer, labor organization or employment agency named in such complaint, hereinafter referred to as the respondent, to answer the charges of such complaint at a hearing before such tribunal, at a time and place to be specified in such notice. The place of any such hearing may be the office of the commission or another place designated by it. The case in support of the complaint shall be presented at the hearing by the attorney general, who shall be counsel for the commission, or the counsel appointed under the provisions of section 31-125a, as the case may be; and no commissioner who previously made the investigation or caused the notice to be issued shall participate in the hearing except as a witness, nor shall he participate in the deliberations of the tribunal in such case. Any endeavors or negotiations for concilation shall not be received in evidence. The respondent may file a written answer to the complaint and appear at such hearing in person or otherwise, with or without counsel, and submit testimony and be fully heard. The tribunal conducting any hearing may permit reasonable amendment to any complaint or answer and the testimony taken at such hearing shall be under oath and be transcribed at the request of any party. If, upon all the evidence, the tribunal finds that a respondent has engaged in any unfair employment practice, it shall state its findings of fact and shall issue and file with the commission and cause to be served on such respondent an order requiring such respondent to cease and desist from such unfair employment practice and further requiring such respondent to take such affirmative action, including, but not limited to, hiring or reinstatement of employees, with or without back pay, or restoration to membership in any respondent labor organization, as in the judgment of the tribunal will effectuate the purpose of this chapter, provided, liability for back pay shall not accrue from a date more than two years prior to the filing or issuance of such complaint and, provided further, interim earnings, including unemployment compensation and welfare assistance or amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded shall be deducted from the amount of back pay to which such person is otherwise entitled. If, upon all the evidence, the tribunal finds that the respondent has not engaged in any alleged unfair employment practice, it shall state its findings of fact and shall similarly issue and file an order dismissing the complaint. The commission shall establish rules of practice to govern, expedite and effectuate the foregoing procedure. Any complaint filed pursuant to this section must be so filed within one hundred and eighty days after the alleged act of discrimination."

§ 46a-60 [a] [1])[2] and had engaged in wrongful retaliation in violation of General Statutes § 31-126 (d) (now § 46a-60 [a] [4]).[3] The CHRO found in favor of the complainant and ordered the DOHS to appoint her to a specifically designated laboratory position to which the DOHS had appointed another person. On appeal by the DOHS to the Superior Court, the CHRO order was upheld, and this court subsequently denied certification. Thereafter, the DOHS reorganized its laboratories and appointed the complainant to a position other than that designated in the CHRO order. Alleging that this DOHS appointment constituted noncompliance with its order, the CHRO filed a motion asking that the DOHS be held in contempt. The trial court denied this motion and the defendants have appealed. We find error.

The underlying facts are undisputed. On June 14, 1977, Antoinette Mason filed a complaint of racial discrimination with the CHRO. After an investigation and a hearing, the CHRO hearing tribunal determined, on January 31, 1980, that the DOHS had engaged in a pattern and practice of racial discrimination against Mason and had unlawfully denied her a promotion in favor of

---

[2] At the time the complaint was filed, General Statutes § 31-126 (a) (now amended as § 46a-60 [a] [1]) provided: "Sec. 31-126. UNFAIR EMPLOYMENT PRACTICES. It shall be an unfair employment practice (a) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, because of the race, color, religious creed, age, sex, marital status, national origin, ancestry or physical disability, including, but not limited to, blindness of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against him in compensation or in terms, conditions or privileges of employment."

[3] At the time the complaint was filed, General Statutes § 31-126 (d) (now amended as § 46a-60 [a] [4]) provided: "Sec. 31-126. UNFAIR EMPLOYMENT PRACTICES. It shall be an unfair employment practice . . . (d) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any unfair employment practice or because he has filed a complaint or testified or assisted in any proceeding under section 31-127."

a less qualified white person, Janet Kapish. To remedy this history of discrimination, the CHRO ordered that Mason be appointed to the position of assistant director, health laboratory division (public health chemistry and biophysics section).[4] Recognizing that Kapish was an innocent and good faith beneficiary of the discriminatory practices engaged in by the DOHS, the CHRO order instructed the DOHS to transfer Kapish to another available position at the same salary and with the same benefits that she would have received as assistant director.[5] The DOHS appealed the decision and order of the hearing tribunal to the Superior Court, and the CHRO cross-petitioned for enforcement of its order. On September 30, 1982, the Superior Court, *Barry, J.,* entered a decree enforcing the hearing tribunal's order and directing DOHS "to comply with said order in all respects." A petition for certification filed by the DOHS was denied on December 7, 1982.

The specific position to which Mason became entitled by virtue of the court order was that of assistant director, health laboratory division (public health chemistry and biophysics section). While judicial proceedings were pending, the title of this position, then held by Kapish, was changed to assistant director, health laboratory

[4] Although the remedial order included provisions in addition to Mason's designation as assistant director, laboratory division (public health chemistry and biophysics section), these other aspects of the remedial order are not before us on the present appeals.

[5] Relevant sections of the order dealing with the respective positions of Mason and Kapish provide:

"1. The complainant, Mrs. Mason, shall be appointed to the position of Assistant Director of the Laboratory Division (Public Health, Chemistry Biophysics Section). . . .

"8. In the event the respondent can properly transfer Ms. Kapish (if she is still employed by them) to a position of equal pay they shall do so except that at the respondents [sic] option it may continue Ms. Kapish at any other available position at the salary and with the benefits she would have received as assistant director."

division (environmental chemistry section). The DOHS then created a new position denominated assistant director, health laboratory division (organic chemistry section) for Mason. As a result of this reorganization dividing up the work of the prior public health chemistry and biophysics section, Mason was placed in a position which did not include all of the responsibilities and duties included in the prior laboratory section at the time of the court order. The DOHS created the two new assistant director positions for two reasons: to carry out the court order of appointment for Mason while continuing Kapish in an available position with the same salary and benefits as an assistant director, and to improve working procedures within the laboratory in response to expansion in its work load and areas of responsibility.

During the contempt proceedings, in which Kapish was given intervenor status, the defendants sought to prove that the DOHS reorganization did not comply with the court order of September, 1982.[6] The trial court, *Kremski, J.,* concluded, however, that the DOHS was not in contempt. Acknowledging that the DOHS reorganization placed Mason in a position with fewer responsibilities and duties than the position described in the court order, the court nonetheless viewed the reorganization as consistent with its own interpretation of the court order. That order, according to the court, imposed on the DOHS a dual obligation: to appoint Mason to an assistant directorship in the laboratory and to appoint Kapish to a position comparable in responsibility to her previous position. In discharging its obligation, the DOHS properly implemented a reorganization that not only responded

---

[6] The defendants offered evidence of a substantial lack of equivalence between Mason's new assistant directorship and the position to which she was to have been promoted. Because of objections by the plaintiff, the defendants were unable to offer evidence about alternate positions in the DOHS to which Kapish might have been appointed.

to its legal obligation under the court order but also took into account the present needs of a department whose work load had significantly expanded since the inception of this litigation in 1977. In effect, the court held that substantially changed circumstances required a modification of the court order directing the DOHS to appoint Mason to the position of assistant director, health laboratory division (public health chemistry and biophysics section) because that position no longer existed.[7]

The CHRO and Mason, who filed separate appeals to this court, urge us to overturn the judgment of the trial court on a number of grounds. Both appellants maintain that the trial court erred : (1) in its construction of the September, 1982 court order; (2) in its factual findings about the appropriateness of the positions offered to Mason and to Kapish, and in the subsidiary evidentiary and procedural rulings that led to these factual findings; and (3) in its conclusion that the reorganization of the DOHS precluded appointment of Mason to the position specified in the 1982 court order. Mason argues, in addition, that the trial court erred in permitting Kapish to intervene as a party plaintiff. In light of our disposition of the case, these issues need not be specifically addressed.

---

[7] It is doubtful that, in the absence of a valid reorganization, the DOHS could have relied on the desirability of providing an appropriate position for Kapish as a defense in contempt proceedings for its failure to appoint Mason to the assistant directorship specifically designated in the September, 1982 court order. Although we held in *Civil Service Commission* v. *Commission on Human Rights & Opportunities,* 195 Conn. 226, 230, 487 A.2d 201 (1985), on a direct appeal of a remedial order, that the victim of a discriminatory practice is not entitled to relief at the expense of innocent incumbent employees, that holding furnishes no basis for a collateral attack on a final judgment. Even if the original remedial order had erroneously failed to reconcile the designated position for Mason with its announced concern for Kapish, the DOHS was obligated to obey the order as specifically written, just as it would have been obligated to obey any other injunctive order issued by a court with jurisdiction over the subject matter and the parties. *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 147, 496 A.2d 476 (1985).

The determinative question in this case is the scope of the trial court's authority, in contempt proceedings, to modify a specific and final remedial order resulting from an administrative finding that the alleged contemnor has engaged in a pattern of discriminatory conduct. In contempt proceedings involving family matters, "[b]y virtue of General Statutes § 46b-8 and Practice Book § 464 (a), a trial court is authorized to grant the affirmative relief of modifying an order for support and alimony to one who is in contempt of such an order." *Greenwood* v. *Greenwood,* 191 Conn. 309, 314, 464 A.2d 771 (1983); *Sanchione* v. *Sanchione,* 173 Conn. 397, 403, 378 A.2d 522 (1977). A similar view prevailed at common law. *Lasprogato* v. *Lasprogato,* 127 Conn. 510, 513, 18 A.2d 353 (1941). Furthermore, in dealing with judgments that decree injunctive relief, we have held that "courts have inherent power to change or modify their own injunctions where circumstances or pertinent law have so changed as to make it equitable to do so." *Adams* v. *Vaill,* 158 Conn. 478, 482, 262 A.2d 169 (1969); *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 494, 234 A.2d 825 (1967). That power must, however, be exercised in a manner consistent with " 'the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. . . .' *Maggio* v. *Zeitz,* 333 U.S. 56, 69, 68 S. Ct. 401, 92 L. Ed. 476 (1948)." *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 148, 496 A.2d 476 (1985). The question is the applicability of these principles, enunciated in cases in which trial courts had plenary authority to fashion the underlying decrees, to the enforcement of final remedial orders that result from administrative proceedings. Although this issue is one of first impression, we believe that the deference to administrative decision making that is reflected in our Uniform Adminis-

trative Procedure Act counsels against judicial modification of administratively derived remedial orders in contempt proceedings.

Our starting point must be the well established principle that, even "[w]hen agency action is overturned . . . because of invalid or insufficient findings . . . a court must ordinarily remand the matter under consideration to the agency for further consideration. *Hartford* v. *Hartford Electric Light Co.*, 172 Conn. 71, 73, 372 A.2d 131 (1976); *Bogue* v. *Zoning Board of Appeals,* 165 Conn. 749, 753–54, 345 A.2d 9 (1974); *Watson* v. *Howard,* 138 Conn. 464, 470, 86 A.2d 67 (1952)." *Feinson* v. *Conservation Commission,* 180 Conn. 421, 429–30, 429 A.2d 910 (1980); see also *Konigsberg* v. *State Bar of California,* 366 U.S. 36, 43–44, 81 S. Ct. 997, 6 L. Ed. 2d 105 (1961); *FCC* v. *Pottsville Broadcasting Co.,* 309 U.S. 134, 145, 60 S. Ct. 437, 84 L. Ed. 656 (1940). Remand for agency consideration is particularly appropriate, we have held, when the issue before the court is one raising important considerations of policy that the agency has not previously had the opportunity to consider. See *Fellin* v. *Administrator,* 196 Conn. 440, 450, 493 A.2d 174 (1985).

It is the CHRO that is charged with the primary responsibility of determining whether discriminatory practices have occurred and what the appropriate remedy for such discrimination must be. When a remedial order of the CHRO has been tested and validated through the judicial process, we hold today that such an order cannot be collaterally modified at the instance of a party resisting judicial enforcement of that order. Undeniably, a court adjudicating contempt proceedings must retain the authority to decide whether a remedial order is so vague and unclear that it is inappropriate to impose sanctions for disobedience of the order. See *Adams* v. *Vaill,* supra, 485–86; *Labbadia* v. *Bailey,* 147

Conn. 82, 86, 157 A.2d 237 (1959). The problem in this case, however, is not ambiguity. At the heart of the controversy that divides the parties is the exactitude of the remedial order that Mason be appointed to a specifically designated assistant directorship in the DOHS laboratory. Judicial authority to deal with ambiguity does not encompass judicial reconsideration of clear and unequivocal remedial orders, even on the ground of a substantial change of circumstances, when those remedial orders represent the culmination of fully litigated administrative proceedings.

Because the trial court's decision that the DOHS was not in contempt resulted from an erroneous view of its authority to modify the express terms of the remedial order of September, 1982, its judgment cannot stand. We have often looked to federal employment discrimination law for guidance in enforcing our own antidiscrimination statute. See *Civil Service Commission* v. *Commission on Human Rights & Opportunities,* 195 Conn. 226, 230, 487 A.2d 201 (1985); *Wroblewski* v. *Lexington Gardens, Inc.,* 188 Conn. 44, 53, 448 A.2d 801 (1982); *Pik-Kwik Stores, Inc.* v. *Commission on Human Rights & Opportunities,* 170 Conn. 327, 331, 365 A.2d 1210 (1976). The federal case law recognizes that appellate courts must inquire into the interpretative reasoning that led a trial court to conclude that a remedial order had not been violated. *N.L.R.B.* v. *Warren Co.,* 350 U.S. 107, 110–13, 76 S. Ct. 185, 100 L. Ed. 96 (1955); *Eaton* v. *Courtaulds of North America, Inc.,* 578 F.2d 87, 90–92 (5th Cir. 1978). When, as here, the trial court's reasoning was erroneous, its conclusion that the questioned conduct did not constitute a contempt is equally erroneous and must be overturned despite the narrow scope of appellate review of contempt proceedings; see *Potter* v. *Board of Selectmen,* 174 Conn. 195, 197, 384 A.2d 369 (1978); *Tobey* v. *Tobey,* 165 Conn. 742, 746, 345 A.2d 21 (1974). In accordance with the

principles we have set out above, the case must be remanded to the CHRO to determine whether a substantial change in circumstances requires modification of its earlier remedial order. See *Civil Service Commission* v. *Commission on Human Rights & Opportunities,* supra, 231.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to remand the case for further consideration by the commission on human rights and opportunities.

In this opinion the other judges concurred.