DONALD LEVY *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES ET AL.
(12238)

LAVERY, FREEDMAN and SPEAR, Js.

Argued February 24—decision released August 16, 1994

*Jeffrey J. Mirmam,* for the appellant (plaintiff).

*Robert B. Hempstead,* with whom, on the brief, were *Joseph F. Keefe* and *Lynn D. Wittenbrink,* for the appellee (defendant Entertainment and Sports Programming Network).

SPEAR, J. The plaintiff, Donald Levy, appeals from the judgment of the trial court dismissing his appeal from a decision by the named defendant, the commission on human rights and opportunities (CHRO).[1] The CHRO dismissed the plaintiff's employment discrimi-

---

[1] General Statutes § 4-183 requires that the CHRO be named a defendant. Because, however, the CHRO was in privity with and an advocate for the plaintiff during the administrative proceedings, it believed it could not oppose him on appeal and repudiate a position it had recently espoused. Accordingly, subsequent to the filing of this appeal, on April 20, 1993, the CHRO submitted a statement indicating that it could not participate in the appeal in light of *Quist* v. *Commission on Human Rights & Opportunities,* Court of Common Pleas for Tolland County, Docket No. 5055 (November 10, 1975).

nation complaint on the basis of its finding that the defendant, Entertainment and Sports Programming Network (ESPN), had not discriminated against the plaintiff. On appeal, the plaintiff claims that the trial court improperly (1) concluded that the CHRO's hearing officer had applied the correct standard of law for a claim of employment discrimination, (2) substituted its judgment for that of the hearing officer as to whether the defendant had satisfied its burden of proof and (3) concluded that the hearing officer's findings of fact were supported by substantial evidence on the record. We affirm the judgment of the trial court.

The hearing officer found the following facts. ESPN hired the plaintiff in January, 1980, as a remote operator-truck driver. His duties included driving the truck to various locations where ESPN was covering sporting events, setting up the equipment on location, and performing general maintenance on the trucks. Before being hired, the plaintiff passed a road test and a written examination. No medical examination was required because the defendant had a certificate from a physician dated October 31, 1979, stating that he was qualified to operate a remote vehicle. ESPN was aware that the plaintiff's hearing was impaired when it hired him.

A series of mishaps ensued over the next few months. Shortly after being hired, the plaintiff fell asleep while driving a truck back from a sporting event. A passenger in the truck attempted unsuccessfully to awaken the plaintiff by shouting loudly at him; when the passenger grabbed for the steering wheel, the plaintiff awoke and managed narrowly to avoid an accident. The plaintiff struck an overhang in Louisiana, causing damage to the vehicle, and also struck an overhang while refueling at a gas station in Connecticut.

On another occasion, the plaintiff had continued to operate a remote vehicle while the compressor governor, a component of the braking system, was broken. While on location in Florida and Louisiana, the plaintiff also damaged two cameras in separate, unrelated incidents. In the second incident, the plaintiff's failure to follow explicit instructions resulted in the loss of an expensive camera. Following the second camera incident, the plaintiff was suspended for two weeks without pay and his competence as a truck driver was evaluated. On the basis of the plaintiff's driving history, ESPN concluded that he could not safely operate a truck and therefore removed him from the remote operator position. He was asked to undergo a medical examination by physician Bainbridge Hanley to determine if his hearing impairment had any influence on his driving ability. The plaintiff failed the hearing test.[2] Hanley refused to certify that the plaintiff was qualified as a truck driver because he did not satisfy the minimum medical qualifications set forth in the motor carrier safety regulations; 49 C.F.R. § 391.41 et seq.;[3]

[2] On the same day that he was evaluated by Hanley, the plaintiff also underwent an audiogram at the University of Connecticut Medical Center performed by James Dempsey, an audiologist. Dempsey concluded that the plaintiff met the minimum hearing requirement under the department of transportation standards as well as the requirements of 49 C.F.R. § 391.41 (b) (11) of the motor carriers safety regulations. The plaintiff's supervisor disregarded the results of the audiogram, however, as it was not performed by a licensed physician in compliance with 49 C.F.R. § 391.43 (a). See footnote 3 for the text of the regulations.

[3] Section 391.41 of title 49 of the Code of Federal Regulations provides in pertinent part: "(a) A person shall not drive a motor vehicle unless he is physically qualified to do so and, except as provided in § 391.67 has on his person the original, or a photographic copy, of a medical examiner's certificate that he is physically qualified to drive a motor vehicle.

"(b) A person is physically qualified to drive a motor vehicle if that person . . . (11) [f]irst perceives a forced whisper voice in the better ear at not less than 5 feet with or without the use of a hearing aid or, if tested by use of an audiometric device, does not have an average hearing loss in the better ear greater than 40 decibels at 500 Hz 1,000 Hz, and 2,000 Hz

because of his hearing deficiency. Accordingly, ESPN stood by its decision to remove the plaintiff from the remote operator position, and in April, 1980, he was assigned to a studio technician position at the same salary that he had been paid as a remote operator.

In November, 1982, ESPN posted an opening for a remote operator for which the plaintiff applied. He did not, however, provide his employer with any updated information regarding his qualifications for the position. Another person, who had extensive experience as a truck driver and mechanic, was selected for that position. The plaintiff's job performance began to deteriorate. On February 20, 1983, he refused to re-edit a tape and subsequently walked off his job in the middle of his shift. ESPN posted a second opening for a remote operator on May 13, 1983, but the plaintiff did not apply for that position. He resigned in June, 1983.

On May 23, 1983, prior to his resignation, the plaintiff filed a complaint with the CHRO alleging that ESPN had violated his rights under General Statutes § 46a-60 (a) (1)[4] by discriminating against him on the

---

with or without a hearing aid when the audiometric device is calibrated to American National Standard (formerly ASA standard) Z24.5—19S1."

Section 391.43 of title 49 of the Code of Federal Regulations provides in pertinent part: "(a) Except as provided in paragraph (b) of this section the medical examination shall be performed by a *licensed doctor of medicine or osteotherapy.*

"(b) A licensed optometrist may perform so much of the medical examination as pertains to visual acuity . . . ." (Emphasis added.)

[4] General Statutes § 46a-60 (a) provides in pertinent part: "It shall be discriminatory practice in violation of this section: (1) For an employer, by himself or his agent . . . to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's . . . physical disability . . . ."

General Statutes § 46a-51 (15) defines "physically disabled" as referring "to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or *hearing impairment* . . . ." (Emphasis added.)

basis of his physical disability, a hearing impairment. The plaintiff specifically asserted that, because of his hearing impairment, ESPN removed him from the remote operator-truck driver position for which he had been hired, deprived him of promotional and other employment opportunities, and constructively discharged him from his employment. Pursuant to General Statutes § 46a-83, the complaint was referred to CHRO investigator Joanne Steinnagel, who conducted an inquiry concerning the allegations raised by the plaintiff and determined that there was reasonable cause to believe ESPN had discriminated against the plaintiff. After several failed attempts to conciliate the matter, Steinnagel certified the complaint for a public hearing.

On December 10, 1991, after eight days of hearings, the hearing officer issued her decision dismissing the plaintiff's complaint. On January 27, 1992, the plaintiff appealed the decision of the hearing officer to the trial court, claiming that (1) in light of the direct evidence of discrimination, the hearing officer failed to apply the appropriate standard of evaluating the plaintiff's discrimination claim and therefore failed to shift the burden of proof to ESPN, and (2) the hearing officer's factual findings were clearly erroneous. A hearing before *Hon. David M. Shea,* state trial referee, took place on January 5, 1993. On February 23, 1993, Judge Shea issued a memorandum of decision affirming the decision of the hearing officer. He concluded that the hearing officer properly applied the standard set forth in *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), to the plaintiff's employment discrimination claim and that her findings were supported by the evidence. This appeal ensued.

I

The plaintiff first claims that the trial court should have concluded that the CHRO applied an incorrect

legal standard for a claim of employment discrimination pursuant to General Statutes § 46a-60 (a) (1).[5] The plaintiff contends that the hearing officer improperly applied the disparate treatment theory when the direct evidence theory was applicable. We disagree.

We look to federal employment discrimination law for guidance in enforcing our own antidiscrimination statute. See *State* v. *Commission on Human Rights & Opportunities,* 211 Conn. 464, 470, 559 A.2d 1120 (1989); *Zlokower* v. *Commission on Human Rights & Opportunities,* 200 Conn. 261, 265, 510 A.2d 985 (1986); *Dept. of Health Services* v. *Commission on Human Rights & Opportunities,* 198 Conn. 479, 489, 503 A.2d 1151 (1986); *Wroblewski* v. *Lexington Gardens, Inc.,* 188 Conn. 44, 53, 448 A.2d 801 (1982); *Pik-Kwik Stores, Inc.* v. *Commission on Human Rights & Opportunities,* 170 Conn. 327, 331, 365 A.2d 1210 (1976). The United States Supreme Court has enunciated two theories of discrimination with differing requirements for establishing a prima facie case and the employer's burdens of proof and production. These theories are the disparate treatment theory; see *Texas Dept. of Community Affairs* v. *Burdine,* 450 U.S. 248, 252–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp.* v. *Green,* supra, 411 U.S. 802; and the direct evidence theory. See *Price Waterhouse* v. *Hopkins,* 490 U.S. 228, 246, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (plurality opinion).[6]

---

[5] See footnote 4.

[6] The plaintiff has adopted the language of the plurality opinion of *Price Waterhouse,* which does not specifically refer to a "direct evidence" theory, but, rather, characterizes *Price Waterhouse* as a "mixed motives" case. Our Supreme Court, however, in applying the *Price Waterhouse* analysis, has adopted the term "direct evidence theory." See *Miko* v. *Commission on Human Rights & Opportunities,* 220 Conn. 192, 596 A.2d 396 (1991). Accordingly, we use the term "direct evidence theory" in the present case, in place of the term "mixed motives" theory.

The United States Supreme Court also set forth the disparate impact theory which "applies to patterns and practices which are facially neutral

The disparate treatment theory is applicable where there is no direct evidence of discrimination but the employer's actions give rise to an inference of discrimination. To establish a prima facie case of employment discrimination under the disparate treatment theory, the plaintiff must prove by a preponderance of the evidence that: "(1) he is a member of a protected class under the statute; (2) he applied for and was qualified for a position for which the employer was seeking applicants; (3) he was denied the position despite being qualified; and (4) the employer continued to seek applicants for the position after denying the plaintiff's application." *Adriani* v. *Commission on Human Rights & Opportunities,* 220 Conn. 307, 321 n.14, 596 A.2d 426 (1991), aff'd, 228 Conn. 545, 636 A.2d 1360 (1994), citing *McDonnell Douglas Corp.* v. *Green,* supra, 411 U.S. 802; *Texas Dept. of Community Affairs* v. *Burdine,* supra, 450 U.S. 253. If the plaintiff succeeds in establishing a prima facie case, he "in effect creates a presumption that the employer unlawfully discriminated against [him]." *Texas Dept. of Community Affairs* v. *Burdine,* supra, 254. The burden then shifts to the employer to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Id. The employer "need not persuade the court that it was actually motivated by the proffered reasons." Id.; *Wroblewski* v. *Lexington Gardens, Inc.,* supra, 188 Conn. 61.

Should the employer carry its burden of production, the plaintiff then has the opportunity to prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. *McDonnell Douglas Corp.* v. *Green,* supra, 411 U.S. 804.

---

but discriminatory as applied, and does not require evidence of subjective intent to discriminate. *Wards Cove Packing Co.* v. *Atonio,* 490 U.S. 642, 645–46, 109 S. Ct. 2115, 104 L. Ed. 2d 733 (1989)." *Miko* v. *Commission on Human Rights & Opportunities,* supra, 220 Conn. 202 n.8. The disparate impact theory is not at issue here.

If the finder of fact rejects the employer's articulated reasons for the alleged discriminatory action, the plaintiff is not entitled to judgment as a matter of law. *St. Mary's Honor Center* v. *Hicks,* U.S. , 113 S. Ct. 2742, 2747, 125 L. Ed. 2d 407 (1993). The plaintiff at all times bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. *Texas Dept. of Community Affairs* v. *Burdine,* supra, 450 U.S. 256.

"The United States Supreme Court recognized that the prima facie case set forth in *McDonnell Douglas Corporation* was not intended to be an 'inflexible formulation.' . . . Rather, the requirements of proof must be tailored to the particular facts of each case. . . . When the plaintiff presents direct evidence of discrimination, the *McDonnell Douglas Corporation* formulation does not apply . . . but rather a modified standard, the direct evidence theory, applies. . . . This departure from the *McDonnell Douglas Corporation* test is justified by the court's interpretation that the shifting burdens of proof required by that case were intended to ensure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.' " (Citations omitted.) *Miko* v. *Commission on Human Rights & Opportunities,* 220 Conn. 192, 204–205, 596 A.2d 396 (1991).

*Price Waterhouse* v. *Hopkins,* supra, 490 U.S. 228, enunciated the standard to be applied where there is direct evidence of discrimination.[7] "*Price Waterhouse*

---

[7] "Direct evidence has been held to include discriminatory statements by decisionmakers related to the decisionmaking process. See *Price Waterhouse* v. *Hopkins,* 490 U.S. 228, 255–58, 109 S. Ct. 1775, 104 L. Ed. 2d 523 (1989); *Equal Employment Opportunity Commission* v. *Alton Packing Corporation,* 901 F.2d 920, 924 (11th Cir. 1990). Direct evidence has also been held to include a policy discriminatory on its face. *Trans World Airlines, Inc.* v. *Thurston,* 469 U.S. 111, 121–22, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985) . . . ." *Miko* v. *Commission on Human Rights & Opportunities,* supra, 220 Conn. 206.

was a so-called 'mixed motives' case, where the employer made a showing that the plaintiff's interpersonal problems were a legitimate concern despite evidence of discrimination against her based on gender. Id., 252. The court stated that, where the plaintiff had introduced sufficient evidence that prohibited discrimination had played a motivating part in her rejection from promotion, the employer had to establish by a preponderance of the evidence that a legitimate reason would have led to the same decision in the absence of discrimination. Id. The critical inquiry is whether the discriminatory motive was a factor in the decision at the moment it was made. . . . Id., 241. An alleged discriminator may not prevail in a mixed motives case by offering a legitimate and sufficient reason for its decision *if that reason did not motivate it at the time of the decision.* (Emphasis added.) Id., 252. The plaintiff does, however, retain the burden of persuasion on the issue of whether a discriminatory motive played a part in the decision. Id., 246. Once the plaintiff has adduced sufficiently persuasive direct evidence that the defendant relied on a discriminatory motive, and the defendant has failed to show by a preponderance of the evidence that a legitimate reason existed at the time of the decision and had motivated that decision, the factfinder may render a judgment for the plaintiff.'' (Internal quotation marks omitted.) *Miko* v. *Commission on Human Rights & Opportunities,* supra, 220 Conn. 205–206.

The trial court properly affirmed the hearing officer's application of the disparate treatment theory. Despite the plaintiff's claim to the contrary, there was no direct evidence of *prohibited* discrimination by ESPN. ESPN removed the plaintiff from the remote operator position because of the repeated incidents within a period of less than four months, in which the plaintiff caused damage to ESPN's camera equipment and remote vehicles by failing to follow orders and by disregarding his

duty to maintain the vehicles and operate them safely. ESPN would have removed any driver with such a history, with or without a hearing impairment.

After the plaintiff was removed from the remote operator position, ESPN asked him to undergo a medical examination, including a hearing test, to determine whether the plaintiff had any medical problems affecting his driving ability. After an examination on April 21, 1990, in which the plaintiff failed his hearing test, Hanley, the physician conducting the test, refused to certify that he was qualified as a truck driver under the motor carrier safety regulations. Accordingly, ESPN assigned the plaintiff to a position as a studio technician.

Although the hearing officer concluded that the plaintiff successfully established an *inference of discrimination* by virtue of his hearing disability, the plaintiff failed to establish that any improper or discriminatory factor motivated ESPN to remove him from his position as a remote operator and to deny him the same position at a later date. The plaintiff's hearing was a legitimate factor to consider because it was directly related to his ability to drive a truck safely.

As there was no direct evidence of prohibited discrimination, the hearing officer properly applied the disparate treatment standard.

## II

The plaintiff next claims that the trial court improperly substituted its judgment for that of the hearing officer as to whether ESPN satisfied its burden of persuasion under *Price Waterhouse* v. *Hopkins,* supra, 490 U.S. 228. We disagree.

The Uniform Administrative Procedure Act governs the judicial review of administrative agency decisions. See *Connecticut Light & Power Co.* v. *Dept. of Public*

*Utility Control,* 219 Conn. 51, 57–58, 591 A.2d 1231 (1991); *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 593, 590 A.2d 447 (1991). In reviewing an appeal from an administrative agency, the trial court must determine whether " 'the agency . . . has acted unreasonably, arbitrarily, illegally or abused its discretion.' " *Ottochian* v. *Freedom of Information Commission,* 221 Conn. 393, 397, 604 A.2d 351 (1992); *Board of Education* v. *State Employees Retirement Commission,* 210 Conn. 531, 541, 556 A.2d 572 (1989); *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* 206 Conn. 554, 573, 538 A.2d 1039 (1988). "The trial court may not retry the case or substitute its judgment for that of the agency . . . ." (Internal quotation marks omitted.) *Smith* v. *Zoning Board of Appeals,* 227 Conn. 71, 80, 629 A.2d 1089 (1993), cert. denied,     U.S.   , 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994); *O'Rourke* v. *Commissioner of Motor Vehicles,* 33 Conn. App. 501, 506, 636 A.2d 409 (1994); see General Statutes § 4-183 (g).

The trial court correctly concluded that the hearing officer did not apply the direct evidence theory enunciated in *Price Waterhouse* v. *Hopkins,* supra, 490 U.S. 228, and did not shift the burden of persuasion to the defendant. The hearing officer adopted the analysis set forth in *McDonnell Douglas Corp.* v. *Green,* supra, 411 U.S. 802, and concluded that the plaintiff had presented sufficient evidence to establish a prima facie presumption of discrimination. She then concluded that ESPN had articulated a legitimate and nondiscriminatory reason for transferring the plaintiff to a studio position at equal pay, thus rebutting the plaintiff's prima facie case; "ESPN was concerned for safety and dependability in its remote operations." She therefore concluded that the plaintiff had not met his burden of proving by a preponderance of the evidence that the reasons offered by ESPN were a pretext for discrimination.

In its memorandum of decision, the trial court stated that the hearing officer had made findings of fact sufficient to support a determination that, had the *Price Waterhouse* doctrine been applied, ESPN would have sustained its burden of persuasion. The trial court did not state that the hearing officer *should* have applied the *Price Waterhouse* direct evidence theory. Rather, the trial court expressly found that this was not a mixed motive case under *Price Waterhouse* because of the absence of direct evidence of discrimination. The trial court concluded, therefore, that the hearing officer had correctly applied the *McDonnell Douglas* standard for allocating the burden of persuasion. Contrary to the plaintiff's assertion, the trial court did not substitute its judgment for that of the hearing officer.

## III

The plaintiff's final claim is that the trial court improperly concluded that the hearing officer's findings of fact were supported by substantial evidence on the record. We disagree.

Under General Statutes § 4-183 (j),[8] the substantial evidence rule governs judicial review of administrative fact-finding. *Miko* v. *Commission on Human Rights & Opportunities,* supra, 220 Conn. 200. In determining whether an administrative finding is supported by substantial evidence, the reviewing court "must defer to the agency's assessment of the credibility of the witnesses

---

[8] General Statutes § 4-183 (j) provides in pertinent part: "The [reviewing] court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

and to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part. . . . [A]n agency is not required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." (Citations omitted; internal quotation marks omitted.) *Briggs* v. *State Employees Retirement Commission,* 210 Conn. 214, 217–18, 554 A.2d 292 (1989); see also *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 593, 590 A.2d 447 (1991). "The determination of issues of fact by the administrative agency should be upheld if the record before the agency affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . Ultimately, the question is not whether the trial court would have reached the same conclusion but whether the record before the [agency] supports the action taken. *Williams* v. *Liquor Control Commission,* 175 Conn. 409, 414, 399 A.2d 834 (1978)." (Citation omitted; internal quotation marks omitted.) *Miko* v. *Commission on Human Rights & Opportunities,* supra, 220 Conn. 200–201. "If the decision of the agency is reasonably supported by the evidence in the record, it must be sustained." *Madow* v. *Muzio,* 176 Conn. 374, 376, 407 A.2d 997 (1978); *Ierardi* v. *Commission on Human Rights & Opportunities,* 15 Conn. App. 569, 582, 546 A.2d 870, cert. denied, 209 Conn. 813, 550 A.2d 1082 (1988). A review of the record before the CHRO reveals that the findings of the hearing officer were supported by substantial evidence.

## A

The plaintiff first contends that the hearing officer's finding that "Hanley did not certify [the plaintiff] as to the medical standards set forth in 49 C.F.R. [§ 391.41] et seq. because [the plaintiff] failed the hearing portion of the exam" is clearly erroneous. The results of the plaintiff's hearing test, administered by Hanley on

April 21, 1980, were admitted into evidence at the hearing. The report indicated that the plaintiff was "not able to hear a whisper at either 5 feet or 20 feet away (facing the other way)." Because the plaintiff did not satisfy the criteria set forth in the motor carrier safety regulations; 49 C.F.R. § 391.41 (b) (11); Hanley refused to sign the certification form that would permit the plaintiff to operate a remote vehicle.

The plaintiff was the only witness who testified that the testing procedures were defective. The hearing officer was not required to believe the plaintiff, but could rely on Hanley's written statement that the plaintiff was unable to hear a forced whisper at five feet. *Laufer* v. *Conservation Commission*, 24 Conn. App. 708, 716, 592 A.2d 392 (1991).

### B

The plaintiff further argues that the hearing officer's finding that he never applied for the May 13, 1983 opening for a remote operator was clearly erroneous. A review of the record before the hearing officer reveals that the plaintiff never filed an application in response to the letter posted by ESPN announcing the available position. The plaintiff admitted that he never filed a formal or written application, but testified that he responded to the job posting by informally discussing his interest in it with his supervisor, Joe Commare. The plaintiff testified that he met with Commare in his office regarding the position, but Commare was noncommittal and basically gave him no response. Commare testified, however, that neither the plaintiff nor any individuals from within ESPN applied for the May 13, 1983 opening. The hearing officer was free to believe Commare and conclude as she did. See id.

### C

The plaintiff's final claim is that the hearing officer's findings that the plaintiff's "job performance began

deteriorating several months prior to his resignation" and that "on February 20, 1983, [the plaintiff] refused to reedit a tape and subsequently walked off his job in the middle of a shift" were clearly erroneous. Contrary to the plaintiff's assertions, these findings were supported by substantial evidence in the record. The plaintiff's immediate supervisor, Gerald Weed, testified that "during the last few months before the plaintiff's resignation, the plaintiff was away from the department whenever he was supposed to be in there editing; the number of personal phone calls; a pattern started forming . . . he would take a sick day either the day before his days off or the day after his days off." Weed also testified that "[a] couple of employees came to [him] with complaints that [the plaintiff] was not doing his work there at night"; and that there was "a noticeable decline in the plaintiff's work, three or four months before he left."

William Lamb, a member of ESPN's engineering department, testified to the February 20, 1993 incident in which the plaintiff walked off the job in the middle of his shift. A letter describing the incident was also admitted as an exhibit.

The plaintiff claims that the hearing officer ignored his testimony that he felt he was constructively discharged by ESPN, and credited only the testimony of ESPN's witnesses. It is the hearing officer's prerogative to assess the credibility of the witnesses and believe or disbelieve any evidence presented. *Briggs* v. *State Employees Retirement Commission,* supra, 210 Conn. 214. Thus, the trial court correctly held that the hearing officer's findings were not clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.

The judgment is affirmed.

In this opinion the other judges concurred.